IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MEGAN RYNN EVANS, | § | |
| *Plaintiff* | § | CIVIL ACTION NO._____ |
| | § | |
| v. | § | |
| | § | |
| CLEAR CREEK INDEPENDENT | § | |
| SCHOOL DISTRICT; *and* ERIC | § | JURY TRIAL DEMANDED |
| WILLIAMS, CASEY O'PRY, STEVEN | § | |
| EBELL, & LEILA SARMECANIC, in | § | |
| their individual and official capacities | § | |
| *Defendants* | § | |

## **PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW PLAINTIFF Dr. Megan Rynn Evans (hereinafter as "Plaintiff"), and files this, her Original Compliant, against Defendant Clear Creek Independent School District (hereinafter, as "Defendant", or "CCISD") and for just cause would show the Court as follows:

### I. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1.  This suit is brought pursuant to Title VII of the Civil Rights Act of 1964, and as such, has been timely filed with the Equal Employment Opportunity Commission.

2.  Pursuant to the determination issued by the EEOC, Plaintiff has received her Statutory Notice of Right to Sue by the Department of Justice, and herein submits her notice as attached.

3.  On or about April 27th, 2021, the U.S. Department of Justice, Civil Rights Division, issued the Notice of Right to Sue within 90 Days to the Plaintiff, under EEOC Charge No. 460-2021-02182. Ninety days from April 27th, 2021 has a terminus of July 27th, 2021. Hence this Original Complaint is filed timely.

## II. BACKGROUND

4.      On or about April 27th, 2021, under Docket No. 030-R1-03-2021, the Texas Commissioner of Education found for the Defendant Clear Creek Independent School District in the appeal of the termination / contractual non-renewal of a Texas Education Code Chapter 21 Employee.

5.      Months prior, on or about November 20th, 2020,  Dr. Evans filed no fewer than three (3) individual and unique grievances against CCISD and its individual employees.

6.      Also on or about November 20th, 2020, Dr. Evans' Counsel of Record submitted a demand letter and litigation hold to Defendant CCISD in response to her concerns regarding her employment after she informed her District's Human Resources Assistant Superintendent and the General Counsel that she had discovered discrepancies with the District's State / Federally funded programs which would necessitate her engagement in a Whistleblower action.  Counsel's demand letter highlighted the Plaintiff's grievances, issues of Title VII gender-based discrimination, and her Whistleblower concerns under Texas Government Code 554.002 *et seq*.

7.      Prior to this date, Dr. Evans' Performance Reviews and Employee Evaluations had been sterling and either met or exceeded expectations.  This is corroborated by audio recordings with her direct supervisor and the Assistant Superintendent of Human Resources.

## III. PARTIES

8.      Plaintiff is an individual and at all pertinent times,  was a resident of Harris County, Houston, Texas.

9.    Defendant Clear Creek Independent School District is a Governmental Body of the State of Texas, and occupies portions of both Galveston County and Harris County, Texas. Defendant's Administrative Offices are located in Galveston County, Texas.  Defendant CCISD may be served through counsel of record, Clay Grover, Mariana Evans, & Alexa Gould, of ROGERS MORRIS & GROVER, LLP, 5718 Westheimer Road, Suite 1200, Houston, Texas 77057.  As Defendant CCISD is a state entity, Plaintiff's Right To Sue has been obtained by and through the U.S. Department of Justice. ( **See Exhibit A** )

10.   Additional Defendants include Eric Williams, Steven Ebell, Casey O'Pry, and Leila Sarmecanic, in their individual and official capacity as employees of the state of Texas.

### IV. VENUE & JURISDICTION

11.   Jurisdiction is proper pursuant to Texas Labor Code §§21.000 et seq.. All jurisdictional prerequisites and conditions precedent, pursuant to TRCP Rule 54, have been met. Defendant CCISD qualifies as an "employer" under §21.002(8)(a) of the Texas Labor Code. Venue and Jurisdiction are also proper in this district under 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claim occurred in this District.

12.   Venue is proper in Harris County, Texas because it is the county in which all or a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred pursuant to Tex. Civ. Prac. & Rem. Code §15.002(a)(1), Harris is the County in which the Plaintiff resides, and the Defendant, Clear Creek Independent School District, as a state entity, is partially located within Harris County, in the State of Texas. (Tex. Civ. Prac. Rem. Code §15.002(a)(3)).

13.     This cause also arises under Federal Question, pursuant to Plaintiff's claims under Title VII of the Civil Rights Act of 1964, under 42 U.S.C. §2000e *et seq.*, and the amount in controversy is over $75,000.00.

## V. PROCEDURAL REQUISITES

14.     All conditions precedent to the filing of this action have been met by Plaintiff.

15.     On or about March 12th, 2021, Plaintiff timely filed her Request for Review of the non-renewal of her Chapter 21 term employment contract to the Commissioner of Education of the State of Texas.

16.     Throughout the Petition for Review process, Defendant CCISD materially failed to produce documents which would constitute it's "true and correct copy of the local record" which the Commissioner required that they file. A true and correct copy of the local record was never submitted by Defendant CCISD. Despite Plaintiff's objections and protestations to the Commissioner, Defendant CCISD was allowed to proceed in noncompliance, and filed multiple briefs wherein factual allegations unsupported by contemporaneous documentation were manufactured. Commissioner Hon. Mike Morath ultimately made his determination based on this arbitrary and capricious evidence, despite the dearth of "substantial evidence."

17.     On or about April 27th, 2021, the Commissioner returned a Determination in favor of Defendant CCISD.

18.     Pursuant to Texas Education Code § 21.307, Plaintiff timely filed her Judicial Appeal to overturn the Commissioner's Decision on the basis of a total lack of support by substantial evidence.

19.  The filing of the above Judicial Appeal has been achieved prior to thirty (30) days from the date of the Commissioner's Determination issued on or about April 27th, 2021, and is currently being tried in the 56th District Court of Galveston, Texas, Cause No. 21-cv-0717.

## VI. FACTUAL ALLEGATIONS

20.  Plaintiff was hired by Defendant into the position of Executive Director of Assessment and Evacuation on or about July 16th, 2018.  Plaintiff held this position until her separation of employment, with a history devoid of negative performance reviews or evaluations.  On or about July 2018 through August 2020, the Plaintiff did have professional goal setting meetings, mid-year updates, and end of year meetings with her direct supervisor, Dr. Steven Ebell, Clear Creek ISD Deputy Superintendent of Curriculum and Instruction; with the exception of Spring 2020 due to the COVID-19 pandemic, and none in 2021. Therefore, a precedent was set by the Plaintiff's direct supervisor, Dr. Ebell, that a goal setting conference, mid-year update, and EOY summative evaluation would occur each contract year to discuss the Plaintiff's performance, progress, areas of improvement, and needed support as applicable.

21.  On or about Friday, October 16, 2020, Plaintiff electronically submitted proposed professional goals to Dr. Ebell by the date requested. Of note – to date of this filing Plaintiff has not received any responsive communication, written or verbal, from Dr. Ebell, regarding proposed BOY goals. Plaintiff was never afforded a beginning-of-the-year, mid-year, or goal planning meeting with Dr. Ebell, to discuss and formalize Plaintiff's professional goals for the 2020-2021 school/contract year.

22. On or about Monday, October 19, 2020, the CCISD Board of Trustees determined candidates to interview for the superintendent vacancy and no internal candidates, namely Dr. Ebell, moved forward in the interview process.

23. On or about Wednesday, October 21, 2020 at 6:05AM, the Plaintiff received an email from Dr. Ebell, which indicated the location for their standing 1:1 weekly meeting was changed from the regular meeting location in Plaintiff's office at the CCISD Learner Support Center to Dr. Ebell's office at the CCISD Education Support Center. Further, Dr. Ebell noted that Dr. Casey O'Pry, CCISD Assistant Superintendent of Human Resources, was also invited to be in attendance. Dr. Ebell indicated that Dr. O'Pry would be joining the meeting to discuss "concerns I have with your job performance."

24. At the time of receipt of the email, Plaintiff had no written memorandums to file, no emails of concern, and received no growth or improvement plans for any issues related to job performance. This electronic communication was the initial indicator that the Plaintiff was being disciplined. Of note – this communiqué from the CCISD Deputy Superintendent of Curriculum and Instruction was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

25. On or about Wednesday, October 21, 2020 at 6:25AM, the Plaintiff emailed Dr. Ebell and Dr. O'Pry that she would be out a full day due to not feeling well. Dr. Ebell responded via email acknowledging receipt of email. Of note – this communiqué from the Plaintiff and the CCISD Deputy Superintendent of Curriculum and Instruction was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

26.     On or about Thursday, October 22, 2020 at 5:54AM, Plaintiff emailed Dr. Ebell and Dr. O'Pry that she was still not feeling well and would be out a full day. Of note – this communiqué from the Plaintiff was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

27.     On or about Friday, October 23, 2020, at 5:40AM, Plaintiff emailed Dr. Ebell and Dr. O'Pry that she was still not feeling well and would be out. Of note – this communiqué from the Plaintiff was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

28.     On or about Monday, October 26, 2020, at 6:04AM, Plaintiff emailed Dr. Ebell and Dr. O'Pry that she was still not feeling well and would be out. Of note – this communiqué from the Plaintiff was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

29.     On or about Monday, October 26, 2020, Dr. Ebell emailed Plaintiff and indicated that she would need to bring a doctor's note upon return. Of note – this communiqué by CCISD Deputy Superintendent of Curriculum and Instruction was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

30.     On or about Monday, October 26, 2020 at 3:14PM the Plaintiff received an email from Dr. O'Pry, which indicated Plaintiff must report directly to the CCISD Human Resources Department to meet with Dr. O'Pry upon her return to work. Of note – this communiqué was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

Plaintiff's Original Complaint

31.     On or about Tuesday, October 27, 2020, after several days of fever and COVID-19 related symptoms, Plaintiff's doctor recommended a COVID-19 test before a return to work.  Of note – this communiqué from the Plaintiff to the CCISD Assistant Superintendent of Human Resources was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

32.     On or about Wednesday, October 28, 2020, the Plaintiff was approved to work remotely (i.e. Telework) by the CCISD Department of Human Resources led by Dr. O'Pry.  Of note – this communiqué from the CCISD Department of Human Resources was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

33.     On or about Thursday, October 29, 2020, Plaintiff continued approved telework from home. No issues related to Plaintiff's job performance were raised through this day beyond Dr. Ebell's initial email, written or verbally, by Dr. Ebell or Dr. O'Pry.

34.     On or about Friday, October 30, 2020, Plaintiff continued approved telework from home. Plaintiff continued approved telework from home. No issues related to Plaintiff's job performance were raised, written or verbally, by Dr. Ebell or Dr. O'Pry.

35.     On or about Monday, November 2, 2020 at 3:00PM, Plaintiff met with Dr. O'Pry per his request in preparation of their meeting with Dr. Ebell scheduled for Wednesday, November 4, 2020. During the meeting, Dr. O'Pry oddly asked questions like: "Are you going to quit?" and "So what is your game? What is your endgame here? What do you want? What's your plan?" throughout the meeting while also saying he believed in the Plaintiff, that that the Plaintiff was a valuable district leader, and assured Plaintiff there was no talk of removing her from her position.

36.     During the meeting, Plaintiff shared with Dr. O'Pry that she had ethical concerns with leadership within her division and requested that Dr. O'Pry meet individually with each of her team members to gain further insight related to Plaintiff's concerns. Of note – Plaintiff audio recorded the meeting in its entirety. There were a total of two (2) attendees throughout the duration of the meeting: (1) Dr. O'Pry and (2) Plaintiff. Therefore, the recording was obtained in accordance with Texas's "one-party consent" wiretapping law. The audio recording and professional transcription was submitted by Plaintiff with her initial Petition for Review to the Texas Education Agency.

37.     On or about Tuesday, November 3rd, 2020, no issues related to Plaintiff's job performance were raised, written or verbally, by Dr. Ebell or Dr. O'Pry.

38.     On or about Wednesday, November 4, 2020 at 10:28AM Dr. O'Pry emailed the Plaintiff and indicated he would meet with Plaintiff's team as she had requested in the next 1-2 weeks to discuss her concerns raised during the November 2, 2020 meeting.  Dr. O'Pry indicated to Plaintiff that she could not for any reason discuss the meetings with her team members before or after the meetings or potentially face disciplinary consequences.  Of note – this communiqué from the Assistant Superintendent of Human Resources was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.  In contrast, CCISD submitted false information in the Local Record as well as in the Factual Allegations section of their brief that indicated that Dr. O'Pry was the one who requested he meet with the Plaintiff's team members.

39.     On or about Wednesday, November 4, 2020, the Plaintiff met with Dr. Ebell for a regular weekly 1:1 meeting in Dr. Ebell's office at the CCISD ESC.  Dr. Ebell expressed no

concerns with Plaintiff's job performance, rather was complimentary about the quantity and quality of Plaintiff's current progress on projects and leadership.

40.  Abnormally, Dr. Ebell requested Plaintiff provide a list of current projects my team was working on, to include timelines, and due dates. Of note – Plaintiff audio recorded the meeting in its entirety.  There were a total of two (2) attendees throughout the duration of the meeting: (1) Dr. Ebell and (2) Plaintiff.  Therefore, the recording was obtained in accordance with Texas's "one-party consent" wiretapping law. The audio recording and professional transcription was submitted by Plaintiff with her initial Petition for Review to the Texas Education Agency.

41.  On or about Wednesday, November 4th, 2020, no issues related to Plaintiff's job performance were raised during the 1:1 meeting or the remainder of the day, written or verbally, by Dr. Ebell or Dr. O'Pry.

42.  On or about Thursday, November 5th, 2020, at 8:55AM, Plaintiff replied to Dr. O'Pry's email thanking Dr. O'Pry for his upcoming meetings with her staff members.  Of note – this communiqué from the Plaintiff was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

43.  On or about Thursday, November 5th, 2020, no issues related to Plaintiff's job performance were raised, written or verbally, by Dr. Ebell or Dr. O'Pry.

44.  On or about Friday, November 6th, 2020, no issues related to Plaintiff's job performance were raised, written or verbally, by Dr. Ebell or Dr. O'Pry.

45.  On or about Monday, November 9th, 2020, no issues related to Plaintiff's job performance were raised, written or verbally, by Dr. Ebell or Dr. O'Pry.

46.     On or about Monday, November 9, 2020, at 8:00PM, Plaintiff emailed Dr. Ebell and indicated she would be out a full day the next day (Tuesday, November 10, 2020) for a personal reason that Dr. Ebell was previously made aware of. Dr. Ebell responded the same evening acknowledging receipt of email.  Of note – this communiqué from the CCISD Deputy Superintendent of Curriculum and Instruction was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

47.     On or about Tuesday, November 10, 2020 at 9:07AM, Dr. O'Pry called Plaintiff's personal cell phone on her day off. Dr. O'Pry told Plaintiff he was driving to the CCISD Learner Support Center to meet with Plaintiff's team as requested to investigate her concerns.

        Dr. O'Pry indicated would be meeting with each of the Plaintiff's team members individually and was giving her a courtesy call in the event she saw Dr. O'Pry in the office. Plaintiff told Dr. O'Pry that she was out of the office for a personal day. Dr. O'Pry responded that he was unaware of Plaintiff's absence. Dr. O'Pry reiterated to Plaintiff that she could not for any reason talk to her team members before or after the meetings or potentially face disciplinary consequences.  Of note – this communiqué from the CCISD Assistant Superintendent of Human Resources was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

48.     On or about Tuesday, November 10, 2020, no issues related to Plaintiff's job performance were raised, written or verbally, by Dr. Ebell or Dr. O'Pry.

49.     On or about Tuesday, November 10, 2020, it was brought to the Plaintiff's attention, by and through third party witnesses, that the CCISD General Counsel, Ms. Leila Sarmecanic, participated in each interview of the Plaintiff's team. Ms. Sarmecanic took notes throughout

each interview and required each of the Plaintiff's team members to sign a statement of confidentiality at the threat of their employment should they disclose any information to the Plaintiff.  Of note – the participation of the General Counsel in interviews and any and all documentation, notes, informal and formal statements, etc. related to all interviews was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.  Further, none of the aforementioned interviews were submitted into the Local Record either.  In contrast, CCISD submitted false information in the Local Record as well as in the facts section of their brief that it was Dr. O'Pry that interviewed the Plaintiff's team members with no mention of the presence of the District's General Counsel.

50.     On or about Tuesday, November 10, 2020, at 10:03PM, Plaintiff emailed Dr. O'Pry and the District's General Counsel, Leila Sarmecanic, to indicate she was made aware that the General Counsel was in attendance at a minimum of one meeting with her team. Plaintiff requested to know if she was under investigation and if so, the reason for the investigation, and the right to submit a written response.  Plaintiff reiterated her intent to submit grievances was forthcoming with four distinct and unique outlined reasons, including a Whistleblower concern, and requested any further retaliatory treatment to cease. Of note – this communiqué was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

51.     On or about Wednesday, November 11, 2020,   no issues related to Plaintiff's job performance were raised, written or verbally, by Dr. Ebell or Dr. O'Pry

52.     On or about Wednesday, November 11, 2020 at 10:00AM, Plaintiff met with Dr. Ebell for their regular weekly 1:1 meeting at the CCISD Education Support Center in Dr. Ebell's

office.  Again, Dr. Ebell expressed no concerns to the Plaintiff related to job performance. Similar to the meeting the week prior, Dr. Ebell followed up on request for a list of current projects the Plaintiff and her team were working on, to include timelines and due dates. The meeting was positive, with Dr. Ebell complimenting the work of Plaintiff's department and leadership.

53.   Of note – Plaintiff audio recorded the meeting in its entirety. There were a total of two (2) attendees throughout the duration of the meeting: (1) Dr. Ebell and (2) Plaintiff. Therefore, the recording was obtained in accordance with Texas's "one-party consent" wiretapping law. The audio recording and professional transcription was submitted by Plaintiff with her initial Petition for Review to the Texas Education Agency.

54.   On or about Thursday, November 12, 2020 at 4:26PM, Dr. O'Pry, in direct response to Plaintiff's November 10th, 2020 email, replied by email and directed Plaintiff to provide him with a written statement, regarding the sum and substance of all her aforementioned concerns which would be the body of her grievance(s). This written statement was given a submission deadline of 4:00PM on Friday, November 13th, 2020 (the next day).   This is *not* a standard procedure within the confines of CCISD, nor is it catalogued within the Texas Education Code or Texas Government Code.

55.   This request and its timing evinces the fact that the two most neutral district employees (General Counsel and Assistant Superintendent of Human Resources) waited two (2) work days to give Plaintiff roughly 24 hours to submit her written statement(s) and grievance(s).

56.   On or about Thursday, November 12, 2020,  no issues related to Plaintiff's job performance were raised, written or verbally, by Dr. Ebell or Dr. O'Pry.

57.   To date, the Plaintiff has been unsuccessful in locating any district bylaws which require submission of a written statement prior to the filing of a formal grievance.  Of note – this communiqué from the CCISD Assistant Superintendent of Human Resources was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

54.   On or about Thursday, November 12, 2020 at 8:38PM, Plaintiff responded via email to Dr. O'Pry and indicated that she could not submit the information requested by the deadline provided. Plaintiff again requested clarification from Dr. O'Pry if this was an official investigation with which Plaintiff was the subject.  Of note – this communiqué from the Plaintiff was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

59.   On or about Thursday, November 13, 2020,  no issues related to Plaintiff's job performance were raised, written or verbally, by Dr. Ebell or Dr. O'Pry.

60.   On or about Friday, November 13, 2020 around 6:07AM, the Plaintiff's district technology access was cut off with no forewarning or communication from district leadership that she was under investigation despite requesting this information in writing *twice* from the CCISD Assistant Superintendent of Human Resources and General Counsel.  Plaintiff was barred from district servers, including the Microsoft 365 Suite, District Shared Folders, and all her secure and confidential Texas Education Agency access directly related to her role and responsibilities was revoked.

61.   To be clear, Plaintiff's district technology rights were fully revoked a little more than thirteen hours *after* the Assistant Superintendent of Human Resources formally directed Plaintiff to

provide *all* documentation related to her concerns. Of note – information related to the Plaintiff's technology revocation was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

62.    On or about Friday, November 13, 2020, throughout the morning, Dr. O'Pry attempted to direct Plaintiff to appear at the ISD HR offices via text message exchange, without allowing Plaintiff to know why her presence was requested, and markedly denying her the allowance of having a union representative, third party, or legal counsel present at the meeting. To be clear, Dr. O'Pry texted Plaintiff that she did not have a legal right to have anyone else present at the requested meeting.  More disturbingly, despite asking three (3) separate times, Plaintiff was never provided with the reason for the requested meeting.

63.    Of note – these communiques, including the text exchanges between the Assistant Superintendent of Human Resources and the Plaintiff were omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

64.    In contrast, CCISD submitted false information in the facts section of their brief to the Commissioner of Education that Plaintiff "did not respond" and "was unresponsive" to Dr. O'Pry's requests throughout the day.

65.    On or about Friday, November 13, 2020, at 9:30AM, it was brought to the Plaintiff's attention, by and through third party witnesses, that Dr. Ebell announced to Plaintiff's team that Plaintiff was placed on administrative leave and "would not be returning."  Of note – this announcement was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

66.     On or about Friday, November 13, 2020, at 1:00PM, it was brought to the Plaintiff's attention, by and through third party witnesses, that Plaintiff's team was directed to and met with their new supervisor, Dr. Robert Bayard (male), Chief Technology Officer.  Of note – this meeting and the change in Plaintiff's department leadership was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

67.     On or about Friday, November 13, 2020 at 6:30PM, Plaintiff received an email from Dr. O'Pry which indicated that she had been summarily placed on administrative leave. The reason for this administrative leave was not provided and no memorandum was attached to the email.  Rather, Dr. O'Pry indicated a letter was mailed to the Plaintiff's home address with additional information.

68.     To date, no specific reason for Plaintiff's administrative leave and technology revocation has been provided.  Plaintiff was disciplined without cause, notification, reason, or record of poor performance.  Of note – this communiqué from the Assistant Superintendent of Human Resources was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

69.     On or about Monday, November 16, 2020, Plaintiff received an additional email from Dr. O'Pry, with a memorandum which informed the Plaintiff that she was placed on administrative leave "pending investigation".  This memorandum contained a directive to – again – provide a written statement encapsulating every last focus and reason for Plaintiff's forthcoming grievances by Friday, November 20, 2020 at 4:00PM.

70.     The above memorandum cited CCISD policy which indicated that failure to comply with an official District investigation could result in termination.  Whether or not this request was

lodged in an attempt to filter Plaintiff's concerns from the Board of Trustees, or an attempt to address the issues prior to their publication to the Board, is unknown.

71.     Of note – this communiqué from the CCISD Assistant Superintendent of Human Resources was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

72.     On or about Tuesday, November 17, 2020, it was brought to the Plaintiff's attention, by and through third party witnesses, that Dr. Ebell made a formal public announcement at the District Administrator Meeting that Dr. Bayard would serve as the interim supervisor of Plaintiffs department.  This announcement was tantamount to publicly announcing Plaintiff's summary suspension and termination from her position at CCISD, and replacement by Dr. Bayard.  At the time of the announcement, Plaintiff had never been disciplined, placed on a growth plan, or received any formal communication related to concerns with job performance.  Of note – this announcement was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

73.     On or about Friday, November 20, 2020 at 3:51PM, Plaintiff submitted three formal grievances as required per district policy and submitted a "written statement" as directed to Dr. O'Pry which notified him that the three (3) submitted grievances would serve as the sum and substance of her written statement.  Plaintiff set forth robust concerns in her grievances to the CCISD Board of Trustees.  Plaintiff's representation submitted a copy of the grievances and all supporting documentation to all members of the CCISD Board of Trustees with a demand letter cover.  Of note – this communiqué from the Plaintiff and from her counsel of record, including Counsel's demand letter, was omitted from the Local Record

submitted by CCISD during the hearing before the Commissioner of Education.

74.    On or about Monday, November 30, 2020, Ms. Sarmecanic contacted Plaintiff's counsel and claimed to not be in receipt of any grievances submitted by Plaintiff. Ms. Sarmecanic's outreach occurred a total of four (4) business days or ten (10) calendar days after Plaintiff's submission.  Ms. Sarmecanic then confirmed receipt of the grievances that afternoon, thus establishing the "window" for grievance hearings and establishing the 15 days prior to a majority of days that Plaintiff was already on leave.  Of note – this communiqué was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

75.    On or about Friday, December 4, 2020 at 4:16 PM, the district's General Counsel communicated electronically with Plaintiff's counsel and relayed, in summary, that: (i) the Plaintiff's previously filed grievances would be time-barred going back only to November 11th, 2020; (ii) that the three distinct grievances were found to be similar enough to consolidate into one grievance; (iii) that the Plaintiff and her Counsel would have thirty (30) minutes to argue their point; and, (iv) that the chosen arbiter over the grievances would be Dr. Smith – one of the very individuals Plaintiff had grieved upon as having targeted her based upon her gender, and as having intentionally warped the analytical data she attempted to present to the CCISD Board of Trustees.  Of note – all communiques from the CCISD General Counsel related to the Plaintiff's consolidated grievance hearing was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

76.   On or about Tuesday, December 15th, 2020, at 9:05am, the Superintendent's Secretary communicated electronically with Plaintiff and Plaintiff's counsel and relayed, in summary, that the Superintendent had dismissed the Plaintiff's concerns in their entirety.  Of note – this communique from the CCISD Superintendent's Secretary and the Superintendent was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

77.   On or about Tuesday, December 15th, 2020 at 10:00am, the district's General Counsel initiated communications with Plaintiff's counsel to discus possible settlement.

78.   On or about Friday, December 18th, 2020, the district's General Counsel sent a proposed settlement agreement to the Plaintiff's counsel for consideration by January 2021.

79.   On or about Thursday, January 21st, 2020, at 2:00pm, the district's General Counsel communicated electronically with Plaintiff and Plaintiff's counsel and relayed, in summary, that if the proposed settlement agreement was *not* executed, language would be publicly posted the following day on the Agenda of the June 25th, 2021 regular meeting of the CCISD Board of Trustees. "*Consider recommendation to propose non-renewal of term employment contract of Dr. Megan Evans*."  A thinly veiled attempt at coercion.

80.   To be precise, CCISD's General Counsel indicated that the Plaintiff herself was copied on the communication to ensure that Plaintiff was aware that the CCISD Superintendent, Dr. Eric Williams' intention to place the above language on the public agenda the next day, *underline*unless they were able to execute a settlement agreement prior to the public posting of the CCISD Board agenda.  Of note – this communique from the CCISD General Counsel was omitted from the Local Record submitted by CCISD during the hearing before the

Commissioner of Education.

81. On or about Friday, January 22nd, 2020, at 12:24pm, the district's General Counsel again communicated electronically with the Plaintiff and Plaintiff's Counsel and relayed, in summary, that is the General Counsel was not in receipt of a signed settlement agreement from the Plaintiff by 10:00am on Monday, January 25th, 2021, CCISD Superintendent Dr. Eric Williams would meet with the CCISD Board of Trustees in a closed session to discuss two agenda items pertaining to Plaintiff: (i) "Consider recommendation to propose non-renewal of term employment contract of certified employee", and; (ii) "Consider recommendation to propose suspension without pay pending discharge of a certified employee." Of note – this communique from the CCISD General Counsel was omitted from the Local Record submitted by CCISD during the hearing before the Commissioner of Education.

82. CCISD, its General Counsel, and Superintendent Eric Williams, knowingly and intentionally engaged in attempted coercion of the Plaintiff, knowing that the publication of the agenda to the general public with the above suggested item entry would defame and slander the Plaintiff's reputation and eligibility within the education field.

83. On or about January 28th, 2021, Plaintiff & Plaintiff's Counsel of Record received a letter from CCISD wherein Superintendent Eric Williams explained that the board unanimously **voted to propose** non-renewal, pursuant to Board Policy DFBB(LEGAL) and Texas Edu. Code Sec. 21.203 — for (i) Failure to maintain an effective working relationship or maintain good report with colleagues; (ii) Failure to fulfill duties or responsibilities; (iii) Inefficiency in the performance of duties; and, (iv) Failure to comply with official

directives – all reasons heretofore undocumented or shared with Plaintiff by any CCISD official.

84. CCISD then directed Plaintiff to refer to CCISD District Policy DFBB(**LOCAL**), a courtesy copy of which CCISD indicated was attached to the same correspondence.  No such copy was included in wither CCISD's letter to the Plaintiff, or the so-called "true and correct local record" submitted to the Commissioner by CCISD.

85. Without a true and correct copy of any documentation from CCISD officials related to concerns with the Plaintiff's job performance, the Plaintiff could not have possibly mounted anything approximating a meaningful response or defense in a District Grievance Hearing to the hitherto unknown allegations leveled against her by the district, or the stipulations of fact which may or may not support such allegations.

86. On or about February 22nd, 2021, Plaintiff and Plaintiff's Counsel of Record received a letter from the CCISD Superintendent Dr. Eric Williams, which explained that the Board **unanimously voted** to non-renew Plaintiff's Chapter 21 Term Contract, pursuant to Board Policy DFBB(**LEGAL**) and Texas Edu. Code Sec. 21.203 for (i) Failure to maintain an effective working relationship or maintain good report with colleagues; (ii) Failure to fulfill duties or responsibilities; (iii) Inefficiency in the performance of duties; and, (iv) Failure to comply with official directives.

87. Plaintiff's Chapter 21 Term Contract was non-renewed by the CCISD Board of Trustees, and upon the recommendation of Superintendent Dr. Eric Williams, at a time with which the Plaintiff had no established professional goals, whether formal or informal, never met with any District leader, namely her direct supervisor, to discuss and finalize professional goals,

or to discuss the Plaintiff's performance, progress, areas of improvement, and needed support as applicable.  Essentially, without a legitimate nondiscriminatory reason.

88.   Respondent CCISD then directed Plaintiff to CCISD District Policy DFBB(LOCAL), a courtesy copy of which Respondent indicated was attached to this same  correspondence. No such copy was included in either Respondent's letter to the Plaintiff, or the so-called "true and correct local record" submitted to the Commissioner by the Respondent.

89.   By letter from the Commissioner of Education, dated March 12, 2021, CCISD was directed to file the response and true and accurate copy of the Local Record for this Review before the Commissioner under the provisions of Tex. Educ. Code §§21.301 *et. seq*. on or before April 1, 2021.

90.   CCISD was further directed by the same letter dated March 12, 2021, that a failure to timely file the complete record may lead to a Decision being entered against CCISD.  *Dukes v. Ft. Worth ISD*, Docket No. 080-R3-197 (Comm'r Educ. 1997).

91.   On March 29, 2021, CCISD submitted a purported  "true and correct copy of the Local Record,"  developed in connection with this matter pursuant to Tex. Educ. Code §21.301. However, Respondent did *not* file a complete, true, and correct local record in this matter with the Commissioner of Education on or before April 1, 2021.  The only evidence submitted by CCISD supporting the non-renewal was one five-page statement authored by Dr. Ebell, which was heretofore unseen by the Plaintiff prior to the date of submission to the Commissioner. CCISD failed to comply with the statutory requirements and meet its burden of production before the Commissioner.

92.   By virtue of the Respondent's total failure to adhere to the ethical rules of procedure and protocol before the Texas Education Agency, and submit a complete, true, and correct local record, both the Commissioner and the Plaintiff were procedurally unable to move forward in this case.

93.   Without a true and correct copy of the CCISD's Local Record, Plaintiff could not possibly hope to mount anything approximating a meaningful response or defense to the hitherto unknown allegations leveled against her by the District, or the stipulations of fact which may or may not support such allegations.

94.   As displayed by the submission crafted by Dr. Ebell set forth before the Commissioner, while CCISD may be unwilling to stipulate to the actual facts of the matter, they are more than willing to craft inaccurate and subjective narratives after the fact.

95.   As of the date of the filing of this instrument, Dr. Evans has been forced to simultaneously lodge a petition for Judicial Review of her Chapter 21 Non-Renewal, requesting that a district court in Galveston, Texas, review the determination of Honorable Judge Mike Morath, in his official capacity as Texas Education Commissioner, and his erroneous determination in favor of CCISD and their non-renewal of Dr. Evans. ( Evans v. CCISD et al, 56th District Court of Galveston, Cause No. 21-cv-0717 ).

96.   Dr. Evans' personal knowledge of the improprieties and misappropriations conducted by the Clear Creek Independent School District, including Dr. Ebell's self-dealing between his consulting team and CCISD[1], as well as the intentional removal of students from the state & federally funded school lunch program, has apparently inspired CCISD to antagonize

---

[1] https://www.thecambriangroup.org/steven-ebell

and defame Dr. Evans to no end.  On information and belief, Dr. Ebell had been working for and/or with the Cambrian group - which was retained by CCISD - prior to his resignation from the District, deepening the air of impropriety and self-dealing.

97.    Moreover, documents of public record have been submitted which have tarnished and defamed Dr. Evans' professional reputation, resulting in her non-renewal, and causing her imminent financial harm.

## VII.    GENDER <u>DISCRIMINATION</u> UNDER TEXAS LABOR CODE §§21.051, 21.125 et seq., *and in the alternative*, 42 U.S.C. §2000e-2 et seq. OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (as amended)

98.    Plaintiff brings suit against Defendant for damages sustained as a result of their discrimination in willful violation of the Texas Commission on Human Rights Act §21.000 et seq of the Texas Labor Code (the "Act"), and in the alternative 42 U.S.C. §2000e-2 et seq, otherwise known as §703 of Title VII of the Civil Rights Act of 1964 (as amended).

### A.    Discrimination under §21.001 *et seq* of the Texas Labor Code

99.    Plaintiff adopts the factual allegations herein above as stated in *haec verba*.

100.    Under §21.051 of the Texas Commission on Human Rights Act (codified within §21.000 et seq of the Texas Labor Code): An employer commits an unlawful employment practice if because of ...<u>sex</u>, the employer: (1)... discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee ... in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee. *Id*.

101. Pursuant *Ysleta ISDA v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005). "To prevail on a claim of gender discrimination, the plaintiffs had to prove that (1) they were members of a class protected by the act, (2) they were qualified for their positions, (3) they were terminated, and (4) they were replaced by a  member of the opposing class. *Id.*

102. In this case, Plaintiff (1) as a female, belongs to a protected class, (2) was qualified for her position, (3) was terminated from her position, and (4) the plaintiff was treated less favorably than similarly situated employees, and upon information and belief, was replaced by a male employee (Dr. Bayard).

103. Under §21.125 of the Texas Commission on Human Rights Act (codified within §21.000 et seq of the Texas Labor Code): "Except as otherwise provided by this chapter, an unlawful employment practice is established when the complainant demonstrates that race, color, *sex*, national origin, religion, age, or disability was a *motivating factor* for an employment practice, even if other factors also motivated the practice, unless race, color, sex, national origin, religion, age, or disability is combined with objective job-related factors to attain diversity in the employer's work force." (Emphasis added) Id.

104. Plaintiff argues that gender was the reason she was subjected to adverse employment actions, including her ultimate termination / non-renewal of her Chapter 21 contract, and would also contend that gender was a motivating factor - *in part or in whole* - for such adverse employment actions, as well as her eventual termination. Plaintiff is prepared to show that no objective job-related factor exists which would foster the requirement of her termination / non-renewal from CCISD, and would argue that no legitimate non-discriminatory reasons exists that would challenge her assertions.

105.   Plaintiff alleges and will prove that Defendants illegally discriminated against her based upon her gender under the Texas Commission on Human Rights Act: §21.000 et seq of the Texas Labor Code (the "Act"), and in the alternative 42 U.S.C. §2000e et seq of Title VII of the Civil Rights Act of 1964 (as amended).

106.   Plaintiff argues that the very job she performed for several years  – without negative evaluations or appraisals, without performance improvement plans or growth plans –  yet with metrics and recorded conversations exhibiting superior performance and demeanor, was taken from her without any legitimate nondiscriminatory reason but for her gender, and given to someone outside of her protected class, establishing a *prima facie* case.

**B.      Discrimination under 42 U.S.C. §2000e-2 et seq. of TITLE VII of Civil Rights Act of 1964 (as amended)**

107.   A claim of intentional discrimination [disparate treatment] may be proved by either direct or circumstantial evidence. See *Wallace v. Methodist Hosp. Sys*. 271 F.3d 212, 219 (5th Cir. 2001). In cases of circumstantial evidence, courts usually follow the burden shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), for indirect discrimination claims. See *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005).

108.   To establish a prima facie case of discrimination, a plaintiff must establish she: (1) is a member of a protected class; (2) was qualified for the position at issue; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class, or other similarly situated persons were treated more favorably. *McCoy*, 492 F.3d at 556; *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

109.    In the instant case, Plaintiff is prepared to show that she (1) is a member of the class (female) who is intended to be protected by the statute; (2) was qualified for the position at issue, especially given her consistent and continuous history of promotions; (3) was subject to adverse employment actions, and ultimately her termination; and (4) was replaced by someone outside the protected class, or other similarly situated persons were treated more favorably. *Id.*

### VIII.    GENDER <u>RETALIATION</u> UNDER TEXAS LABOR CODE §§21.055 et seq., and in the alternative, 42 U.S.C. §2000e-3(a) et seq. OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (as amended)

110.    Plaintiff adopts the factual allegations herein above as stated in *haec verba*.

111.    Plaintiff brings suit against Defendant for damages sustained as a result of their retaliation in willful violation of the Texas Commission on Human Rights Act §21.055 of the Texas Labor Code (the "Act"), and in the alternative 42 U.S.C. §2000e-3(a) et seq, otherwise known as §704, of Title VII of the Civil Rights Act of 1964 (as amended).

### A.    Retaliation under §21.055 et seq of the Texas Labor Code

112.    Plaintiff adopts the factual allegations herein above as stated in *haec verba*.

113.    Pursuant to §21.055 of the Texas Labor Code, an "employer" is prohibited from retaliating or otherwise discriminating against a person who: (1) opposes a discriminatory practice, (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in an investigation, proceeding, or hearing. See Texas Labor Code §21.055.

114.    A plaintiff can establish a prima facie case of unlawful [21.055] retaliation by showing: (1) the employee engaged in a protected activity, (2) the employer took adverse

employment action against the employee, and (3) a causal connection showing the

employer took the adverse employment action based on the employee's engagement in the

protected activity..." *Cox & Smith, Inc. v. Cook*, 974 S.W.2d 217, 223 (Tex.App. - San

Antonio 1998, pet. denied). See also *Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282 (Tex.

App.-Corpus Christi 2000, pet. denied).

115.    In order to engage in a protected activity, an employee must complain about

discrimination covered by the TCHRA / Chapter 21 of the Texas Labor Code. *Anderson*

*v. Limestone County, Texas*, 2008 Tex. App. LEXIS 5041 (Tex. App. - Waco July 2,

2008, pet. denied). (quoting *Spinks v. Trugreen Landcare, L.L.C.*, 322 F. Supp. 2d 784,

796 (S.D. Tex. 2004)). If the plaintiff makes this showing, the burden shifts to the

defendant-employer to articulate a legitimate non-retaliatory reason for the adverse

employment action. *Hernandez v. Grey Wolf Drilling*, L.P., 350 S.W.3d 281, 286 (Tex.

App. - San Antonio 2011).

116.    Under the tenants of the TCHRA, "a 'but-for' causal nexus must exist between the

protected activity and the employer's prohibited conduct." *Anderson v. Limestone County,*

*Texas*, 2008 Tex. App. LEXIS 5041 (Tex. App. - Waco no pet.)(quoting *Herbert v. City*

*of Forest Hill*, 189 S.W.3d 369, 377 (Tex. App. - Fort Worth 2006, no pet.))

117.    The standard of proof is that the plaintiff must show that "without his protected activity,

the employer's prohibited conduct would not have occurred when it did." *Id.* While this

appears to be the same 'but-for' causation standard in a Title VII retaliation claim, the

courts in Texas have made a further qualification, stating that "the plaintiff need not

establish that the protected activity was the sole cause of the employer's prohibited

conduct." (Emphasis added) *Id.*

118. To "assert a claim of retaliatory discharge, the plaintiff must... establish...a prima facie case of discrimination, which...gives rise to a presumption that the employer unlawfully discriminated against the employee. The burden then shifts to the...employer to rebut this presumption by articulating a legitimate, nondiscriminatory reason fore the averse employment action. The employer meets its burden by setting forth...a reason for dismissal legally sufficient to justify a judgment in its favor. *Graves v. Komet*, 982 S.W.2d 551, 554-555 (Tex.App. - San Antonio 1998, no pet.)

119. Pursuant to the facts alleged above, Plaintiff would contend that a *prima facie* case of discrimination has been established.  Plaintiff further assert her claim of retaliation in satisfaction of the requisite elements of TCHRA §21.055, namely; (1) the Plaintiff engaged in a protected activity of complaining about discrimination; (2) her employer, CCISD and its officers and board of trustees, took adverse employment action against her, culminating in her retaliatory termination; and (3) Plaintiff argues that there is a causal connection showing the employer took the adverse employment action based on the employee's engagement in the protected activity, evidenced by extreme proximity in time.

120. Finally, Plaintiff argues that under *Anderson*, her grievances and attempt to engage in Whistleblower activity to the CCISD Board of Trustees, and General Counsel Leila Sarmecanic prior to her placement on administrative leave, substantiate her entry into 'protected activity'. *Anderson v. Limestone County*, Texas, 2008 Tex. App. LEXIS 5041 (Tex. App. - Waco July 2, 2008, pet. denied).

**B.     Retaliation under 42 U.S.C. §2000e-3(a) et seq, §704, of Title VII of the Civil Rights Act of 1964 (as amended)**

121.   A plaintiff may proceed with a Title VII Retaliation claim even after the underlying discrimination claim has been dismissed. E.g. *Steffy v. Ford Motor Co. Inc*., 04-cv-319s, 2007 U.S. Dist. Lexis 20524, at *35 (W.D.N.Y. March 22, 2007)(discrimination and harassment claim dismissed but plaintiff allowed to proceed with retaliation claim); *Rivas v. Steward Ventures Inc. d/b/a Alamo Rental Car,* No. CV-05-3801, 2007 U.S. Dist. Lexis 10232, at *17 (D. Ariz., Feb. 13, 2007)(granting summary judgment on plaintiff's sexual harassment claim but permitting retaliation claim to proceed).

122.   Absent direct evidence of discrimination, the analytical framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Community Affairs v. BuCity of Wallerne*, 450 U.S. 248 (1981) is used to decide Title VII Retaliation cases based on circumstantial evidence.  This analytical model has generally been adopted for retaliation claims regardless of the court or the statutory basis for the protected activity.

123.   A plaintiff pursuing a Title VII Retaliation claim must initially establish a *prima facie* case. To do so, the plaintiff must show: (i) he or she engaged in protected activity; (ii) the employer carried out an adverse employment action; and (iii) a casual connection between the protected activity and the adverse action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).

124.   In the Fifth Circuit, the mixed motive or "motivating factor" standard is also available in circumstantial evidence retaliation cases. Accordingly a plaintiff can recover if she can

show that protected activity was a "motivating factor" in the employment decision, even if other factors also motivated the practice. See, e.g. *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333 (5th Cir. 2005); see *Smith v. Xerox Corp.*, 602 F.3d 320, 333 (5th Cir. 2010)(holding mixed- motive standard applies to Title VII retaliation claims even where plaintiff has no direct evidence of retaliation).

125.   An employee may show that he or she has engaged in protected activity by demonstrating either that she participated in an activity protected by the employment statute, or that she opposed an unlawful employment practice prohibited by the employment statute. See *Crawford v. Metro Gov't Nashville & Davidson County*, 555 U.S. at 277-78 (2009).  An employer may not retaliate against an employee for engaging in a protected activity. Pursuant to 42 U.S.C. 2000e-3(a) protected activities include, *but are not limited to*, (i) the filing of a lawsuit, (ii) a request for maternity leave, (iii) hiring an attorney, or even (iv) *an informal oral complaint*.

126.   Moreover, under the expanded reasoning of *Burlington*, adverse employment actions constituting *prima facie* retaliation may include, giving an employee additional responsibilities without commensurate promotion or increase in pay; *Jones v. Griffin*, 2006 U.S. Dist. Lexis 57497, at *6 (S.D. Tex. Aug. 3, 2006); or denying technical training, and refusing to pay for certification materials, *Henderson v. Southwestern Bell Comm., Inc.*, 2006 U.S. Dist. Lexis 49477, at *13 (W.D. Tex. July 13, 2006).

127.   Plaintiff would show that she has met the required elements under *Stewart*. (i) Plaintiff engaged in protected activity in the form of such oral and written complaints; (ii) her employer, CCISD, carried out multiple adverse employment action(s) against her,

including termination; and (iii) a casual connection between the protected activity and the adverse action exists. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). Plaintiff would further argue that the causal nexus is bolstered by the extreme proximity in time between her three grievances and attempted Whistleblower complaint to the CCISD General Counsel, and her retaliatory termination.

128.    Plaintiff is aware that pursuant to the holding in *Nassar*, Title VII Retaliation cases still require a "but-for" causation to substantiate the claim of retaliation. *University of Texas Southwestern Medical Center v. Nassar*, 2013 U.S. LEXIS 4704 (June 24, 2013). With this in mind, Plaintiff contends that 'but-for' her informing the CCISD General Counsel of an intent to file a Whistleblower claim, as well as her multiple grievances against Dr. Ebell, Dr. Smith, Dr. O'Pry, and other administrator(s), she would not have been terminated / non-renewed.  Plaintiff again cites her record of continuous promotions and outstanding work ethic, as well as the catalog of transcribed recordings of her conversations two *days* prior to her being placed on administrative leave elucidating her superlative work ethic, accomplishments, and abilities.

### IX.   VIOLATION OF 42 U.S.C.  §1983 under the First Amendment,<br>and Fourteenth Amendment, *in the alternative*

129.    All factual allegations above are reiterated *en haec verba*.

130.    To establish prima facie claims under 1983, the Plaintiff must show (i) that the Defendant acted under color of state law.  The Plaintiff must also show that, while acting under color of state law, (ii) the Defendant deprived the Plaintiff of a federal, constitutional, statutory

right.[2]

131. A person acts 'under color of state law' when they use power that they possess by virtue of the state's laws. A person can act under color of state law even if the act itself violates state law.  Further, state law can include any ordinance or regulation, and the term state extends to political subdivisions including municipalities or municipal agencies.

132. Hence Qualified Immunity *cannot* be applied as a defense to these allegations.

133. On multiple occasions, the Defendant CCISD, including its agents and officials – specifically, Dr. Ebell , Dr. O'Pry, and Dr. Smith, Leila Sarmecanic, and Dr. Williams, obstructed Plaintiff's First Amendment Rights by either neutralizing her ability to speak up about certain incidents, or baring her on pain of employment from speaking to co-workers.

134. When Plaintiff intimated that she felt a whistle blower complaint was necessary regarding the misappropriation of state and federal funds for the school lunch program - an issue *not* under her purview or responsibilities - the aforementioned administrators moved to silence her through unsubstantiated administrative leave, a gag order, and ultimately her erroneous termination from employment.

135. In the alternative, the above listed individuals fundamentally denied Plaintiff's process by baring Plaintiff from the right to appeal or engage in appropriate hearings before the CCISD Board of Trustees by (i) consolidating her individual grievances, each of which was in actuality unique and separate; (ii) placing a member of the very individuals

---

[2] *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); see also, e.g., *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995)

accused of malfeasance within the Plaintiff's grievances as the 'judge' or 'arbiter' of those proceedings (Dr. Smith), and (iii) supplanting the Plaintiff's concerns with their own obfuscation and inaccurate reports.  This asymmetrical approach denied the Plaintiff the opportunity to bring the totality of her concerns before the district's Board of Trustees in any meaningful manner.  It is public knowledge that Ms. Sarmecanic, prior to serving as the CCISD General Counsel, was previously employed by Rogers Morris & Grover LLP, the counsel of record employed by CCISD in all actions relevant to this case.

## X.   DEFAMATION

136.   Plaintiff reiterates all factual allegations above, *en haec verba.*

137.   To prove a successful defamation claim, the plaintiff must show the following:  (1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the statement's truth; and (4) damages, unless the statement constitutes defamation *per se.  Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017).

138.   Moreover, to support a claim for defamation, the plaintiff must show that the false statement was actually published to a third party.  For these purposes, a statement is published when it is communicated to a third party who is capable of understanding its defamatory meaning and moreover in such a way that the person did, in fact, understand its defamatory meaning.  *Thomas-Smith v. Mackin*, 238 S.W.3d 503, 507 (Tex. App.—Houston [14th Dist.] 2007, no pet.).  The Plaintiff herein would show that the publication of these patently false statements to the Texas Commissioner of Education, as well as the publication of the Board's agenda to the public at large – a third party – meets the above qualifier.

139.    These defamatory statements were published by CCISD Administrators specifically to the
        CCISD Board of Directors, to the TEA, and to Judge Mike Morath – the acting
        Commissioner of Education, and are now accessible to the public at large *via* FOIA
        request.   Further, those patently false statements were specifically designed to result in
        the non-renewal of the Plaintiff's Chapter 21 Term contract with CCISD, resulting in
        significant financial and non-financial damages to her personally.

140.    To be clear, these statements were not merely unflattering or abusive, but caused actual
        injury to her reputation, damaged her financially, and resulted in her severe mental
        anguish. See  *Neyland v. Thompson*, 2015 WL 1612155 (Tex. App.—Austin 2015).
        Examples of statements that are defamatory *per se* include those accusing someone of a
        crime *or those that tend to injure a person in his office, profession, or occupation*.
        (emphasis added) *In re Lipsky*, 460 S.W.3d at 596.  As the Plaintiff first learned of these
        statements in January of 2021, she is within the statute of limitations for these concerns.

141.    A one-year statute of limitations applies to actions for defamation.  See Tex. Civ. Prac. &
        Rem. Code § 16.002(a).  For these purposes, an action for defamation accrues when the
        defamatory statement is published.  See *San Antonio Credit Union v. O'Connor*, 115
        S.W.3d 82, 96 (Tex. App.—San Antonio 2003, pet. denied).  *However*, the discovery rule
        can apply to an action for defamation when a defamatory statement is "inherently
        undiscoverable" or not a matter of public knowledge.  *Velocity Databank, Inc. v. Shell
        Offshore, Inc*., 456 S.W.3d 605, 609 (Tex. App.—Houston [1st Dist.] 2014, pet. denied);
        *Newson v. Brod*, 89 S.W.3d 732, 736 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

## XI. BREACH OF CONTRACT

142.   Plaintiff reiterates all factual allegations above, *en haec verba*.

143.   Pursuant to the Texas Education Code, Plaintiff is what is known as a "Chapter 21"

employee.[3]  Specifically, Plaintiff was a Term employee, pursuant to

Title 2 § 21.002(a)(3) – whose employment is controlled by § 21.201 *et seq*.

144.   The conditions of this type of employment require particular and exacting standards for

review of a Term employee's non-renewal.  Among these conditions are the employee's

ability to seek equitable and fair hearings before the District's Board or specially selected

hearing officer.  Despite the submission of multiple grievances citing the male department

heads whom routinely operated with and above the Plaintiff, the District's General

Counsel and Board of Trustees saw fit to position Dr. Smit – one of the very individuals

complained of by the Plaintiff within her grievances – as the so-called impartial arbiter of

her complaints and concerns.

## XII.   INFERENCE OF PRETEXT

145.   " 'Substantial Evidence' means 'more than a mere scintilla' but less than the great weight

and preponderance of the evidence." *Heger v. Frisco I.S.D.*, Dkt. No. 120-R1a-584

(1985 ).  This is true even if only one of the reasons for non-renewal is supported by

substantial evidence. *Black v. Hart I.S.D.*, Dtk. No. 087-R1-0612 (Comm'r Educ. 2012)

146.   However, unlike the Plaintiff in *Black v. Hart*, literally <u>none</u> of the proffered reasons for

CCISD's non-renewal of Dr. Evan's Chapter 21 Term Contract, is supported by

---

[3] Plaintiff is an educator and afforded a special contractual relationship with the state and state agencies, pursuant to Title 2, Chapter 21 of the **Texas Education Code** — *not* to be confused with Chapter 21 of the Texas Labor Code.

*substantial* evidence. *Id.*  Indeed, CCISD has consistently failed to provide anything close to a legitimate non-discriminatory reason aside from the narrative offered before the Texas Commissioner of Education as the Defendant's entirety of the Local Record during her TEC appeal.

147.   As the Defendant only submitted the aforementioned subjective narrative to the Texas Commissioner of Education as it's so-called version of the Local Record, it follows logically that the same submission was placed before the CCISD Board of Directors during their initial decision to non-renew the Plaintiff's Chapter 21 Contract.

148.   While the Defendant has argued previously that this submission qualifies as a 'mere scintilla' which the Commissioner may review and judge at his discretion, this admission fails to catalog the report - such as it is - as something which would carry the *preponderance of evidence*. And unfortunately for the Defendant, the *preponderance of evidence* standard, ***does*** apply to the non-renewal hearing before the school board.(emphasis added)  See *Rodgers v. Edinburg Consolidated I.S.D.*, Dkt. No. 171-R1-898 (Comm'r Educ. 1998). See also *Whitaker v. Moses*, 40 S.W.3d 176 (Tex. App. – Texarkana 2001).  Hence their proffered 'evidence' was flawed from the start.

149.   Time and again the Defendant has cited vague and nebulous reasons for the non-renewal of Dr. Evans, citing such unspecified concerns as "significant or repeated failure to follow board policy or administrative directives" without clearly outlining (i) what policies or directives were breached, or (ii) how Dr. Evans specifically failed to follow or abide by said policies or directives.  *Jones v. Northside I.S.D.*, Dkt. No. 015-R2-1084 (Comm'r Educ. 1987). True to form, the Defendant CCISD has cited the laziest and most

amorphous violation it could, straight from the Texas Documentation Handbook, 6th Edition.

150.  Previously rulings by the Texas Education Commissioner have held that "[d]eficiencies as pointed out in observation reports, appraisals or evaluations, supplemental memoranda, or other communications" is too broad to be very meaningful.  *Kopycinski v. Fort Bend I.S.D.*, Dkt. No. 111-R1-598 (Comm'r Educ. 1998).  See also *Lowry v. Brooksmith I.S.D.*, Dkt. No. 054-R1-0509 (Comm'r Educ. 2009).

151.  Of note, Dr. Evans was never informed of any exact deficiencies at ***any*** time during her employment or administrative leave, and was only informed of them via the hitherto unseen subjective narrative statements in CCISD's submission of the Local Record to the Texas Commissioner of Education during her Review of Non-Renewal.

152.  To be clear, at no time was Dr. Evans made aware of any performance or behavioral concerns which might jeopardize her employment with the Defendant, despite the fact that a *litany* of administrative cases and rules dictate that the opposite should have occurred. See *Trimboli v. Board of Education of Wayne Cnty.*, 280 S.E.2d 686 (W.Va. 1981).(holding that failure to allow reasonable time to correct deficiencies may lead to reinstatement.) See also *Baker v. Rice I.S.D.*, Dkt. No. 227-R2-493 (Comm'r Educ. 1995).  This was not taken into consideration by the Commissioner or CCISD.

153.  In point of fact, a volume of cases have allowed teachers and administrators anywhere from forty-five (45) days to one (1) year to grow and improve, indicating that each case must be judged individually for duration of time, but that at least *some* time should be given.  See *Board of Education of School District No. 131 v. Illinois State Board of*

*Education*, 403 N.E.2d 277 (Ill. App. 2d 1980).; *Community School District No. 60 v. Maclin*, 435 N.E.2d 845 (Ill. App. 2d 1982).; *Ganyo v. Independent School District No. 832*, 311 N.W.2d 497 (Minn. 1981).; and *McKenzie v. Webster Parish School Board*, 653 S.2d 215 (La. App. 2 Cir., 1995).

154.    To present date, Dr. Evans has yet to receive a performance review, a formal appraisal, any formal contemporaneous documentation of her alleged failure to adhere to directives or violations of other District policies, any Specific Incident Memoranda, or any Last Chance Memoranda.  She was never interviewed prior to an investigation conducted by the male administrators of her department, nor afterward.  To present date, she does not even know precisely why her Chapter 21 contract was non-renewed.  At no point in 2021 did Dr. Ebell even issue the required  goal setting conferences, mid-year update, and/or EOY summative evaluation to discuss the Plaintiff's performance, progress, areas of improvement, and needed support as applicable.  Nor has she received the findings or results of any so-called "investigations" conducted by the district.

155.    What *is* known, is that these male administrators: Ebell, Smith, O'Pry, and others, controlled *every* document and narrative submitted to the CCISD Board of Directors; that Dr. Smith was nominated by CCISD and its General Counsel as the Administrative Judge set to oversee Dr. Evans' grievances *and* non-renewal hearing before the CCISD Board of Directors; and, that Superintendent Williams unquestioningly accepted these prejudicial submissions and half-truths, despite the fact that Dr. Evans had lodged multiple grievances against these **same** individuals, each grievance having been submitted with its own volume of evidence.  Was Dr. Smith to censure *himself* ?

156.   Moreover, it is also known that the General Counsel of CCISD, Leila Sarmecanic, is

actually former counsel at Rogers, Morris & Grover, LLP.[4]  Dr. Evans informed Ms.

Sarmecanic of her Whistleblower concerns, and the only response was Dr. O'Pry placing

Dr. Evans on leave.  Ms. Saremcanic was also present during the investigations of Dr.

Evans' team and the crafting of their statements – Counsel also required these team

members to execute Non-Disclosure Agreements, barring these individuals from

contacting Dr. Evans or speaking to one another regarding any issues related to Dr. Evans

or those interviews.  Counsel and Human Resources have failed to even pretend to exhibit

any neutrality in their dealings with Dr. Evans.

157.   **LACK OF CONTEMPORANEOUS DOCUMENTATION.** "[W]hen an employer's

stated motivation for an adverse employment decision involves the employee's

*performance*, but there is *no supporting documentation*, a jury can reasonably infer

pretext." (Emphasis added)  See *Lloyd* v. *Georgia Gulf Corp*., 961 F.2d 1190, 1195 (5th

Cir. 1992); (citing *Walther* v. *Lone Star Gas Co.*, 952 F.2d 119, 124 (5th Cir. 1992);

*Hansard* v. *Pepsi-Cola Metropolitan Bottling Co.*, 865 F.2d 1461, 1465( 5th Cir.

1989)("where the only evidence of intent is oral testimony, a jury could always choose to

discredit it.").

158.   **SUPPORTING EVIDENCE IS NARRATIVE FROM INTERESTED WITNESSES.**

See  *Heinsohn* v. *Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) (holding that

summary judgment was not proper in a discrimination case where the employer had *no*

contemporaneous documentation to support its assertions of poor performance against the

---

[4] https://www.avvo.com/attorneys/77057-tx-leila-sarmecanic-65493.html

employee, and instead relied solely on *after-the-fact documentation* and *testimony from interested witnesses*)(emphasis added); see also *Burton* v. *Freescale Semiconductor, Inc.*, 798 F.3d at 239-40 (holding that the lack of contemporaneous documentation to support claims of poor performance may in appropriate cases be evidence of pretext, and reversing summary judgment that had been entered for the employer by the district court)

159.    Defendant CCISD has literally only provided subjective statements from the very individuals whom Dr. Evans had previously grieved against.  Fortunately, Dr. Evans had the foresight to record her final conversations with these individuals, which only demonstrate her superlative conduct and abilities, and highlight her ability to perform above and beyond expectations.

## XII.  JURY TRIAL

160.    Plaintiff hereby requests a trial by jury on the merits of all of her claims.

## XIII. DAMAGES

161.    Plaintiff contends that her steady and continuous pattern of advancement in the workplace was hindered and ultimately destroyed by the above-named employees, officers, agents, and administrators of Defendant Clear Creek Independent School District.

162.    Plaintiff further contends that the job she performed for years without negative metrics, negative appraisals, performance growth or improvement plans, or other maladies, was removed from her and given to someone outside of her protected class.

163.    The Plaintiff had displayed a steady pattern of exemplary performance in her job, and has earned geometrically increasing raises throughout the duration of her employment. Plaintiff would further contend that her employment at CCISD, and positive performance

reviews meriting further increases in pay, would have continued, but for the actions - or lack thereof - executed by the male-dominated infrastructure of her Department, in direct response and retaliation to her complaints and grievances.

164.   The damages under Title VII consist of back-pay, front-pay (or reinstatement), compensatory damages, punitive damages, attorney's fees, and costs.  Each component is explained below:

165.   **BACK PAY**.  Prevailing claimants under the anti-discrimination laws may recover lost back-pay and benefits.  *See Miller v. Raytheon Co.*, 716 F.3d 138, 146 (5th Cir. 2013). The purpose of back pay is to "make whole the injured party by placing that individual in the position he or she would have been in but for the discrimination."  *Sellers v. Delgado Cmty. Coll.*, 839 F.2d 1132, 1136 (5th Cir. 1988).

166.   **FRONT PAY**.  "Front pay refers to future lost earnings."  *Wal-Mart Stores v. Davis*, 979 S.W.2d 30, 45 (Tex. App.–Austin 1998, pet. denied).  Regarding the calculation of front-pay, the Fifth Circuit has stated that  "[f]ront pay is . . . **calculated from the date of judgment to age 70**, or the normal retirement age, and should reflect earnings in mitigation of damages."  *Patterson*, 90 F.3d at 936 n. 8 (citing J. Hardin Marion, Legal and Equitable Remedies Under the Age Discrimination in Employment Act, 45 MD.L.REV. 298, 330–334 (1986)).  *See also Blum v. Witco Chem. Corp.*, 829 F.2d 367, 374 (3d Cir. 1987) ("In calculating a front pay award, the jury must consider the expected future damages caused by defendant's wrongful conduct from the date of judgment to retirement.").

167.  **COMPENSATORY DAMAGES**.  Dr. Evans has suffered future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, for which she seeks recovery in this lawsuit under Section 1981 and/or Title VII.  *See, e.g.*, *Salinas v. O'Neill*, 286 F.3d 827, 833 (5th Cir. 2002) (affirming $150,000.00 compensatory damages award under Section 1981 where the plaintiff did not receive a position because of his race); 42 U.S.C. § 1981A(a)(1) (providing for compensatory damages for such harms under Title VII).

168.  **PUNITIVE DAMAGES**.  The Defendants intentionally acted with malice and reckless indifference to Dr. Evans' federally protected civil rights, thus justifying awards of punitive damages under Section 1981 and/or Title VII.  *See, e.g.*, *Abner v. Kansas City Southern Railroad Co.*, 513 F.3d 154, 164 (5th Cir. 2008) (affirming $125,000.00 punitive damages awards to each plaintiff under Section 1981, even though each plaintiff was awarded only $1.00 in actual damages, and strongly suggesting that any punitive damages award up to $300,000.00 per plaintiff would have been appropriate even in the absence of any actual damages); *Hampton v. Dillard Dept. Stores*, 18 F. Supp. 2d 1256 (D. Kan. 1998) (awarding the plaintiff $1,100,000 in punitive damages in a Section 1981 race discrimination case); 42 U.S.C. § 1981A(a)(1) (providing for punitive damages under Title VII when the discrimination is shown to be with "malice or reckless indifference"). In *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S. Ct. 2118 (1999) the U.S. Supreme Court, interpreting Title VII, held that to satisfy the "malice or reckless indifference" requirement, the plaintiff does not have to prove that the violation was egregious or outrageous.  *Id*. at 535-36.

169.   All that is required is proof that the employer knew that it was acting in the face of a perceived risk that its actions were in violations of the law's prohibition against discrimination.  *Id*.; *see also Schexnayder v. Bonfiglio*, 167 Fed. Appx. 364, 368 (5th Cir. 2006) ("a jury may award punitive damages pursuant to Title VII merely if the employer knew it *may have been* violating the law.") (italics in original).

170.   **DEFAMATION**. Generally, with any cause of action under Texas law, a plaintiff must show damages.  However, in defamation cases, if the false and defamatory statement at issue is considered defamatory *per se*, the plaintiff may be awarded nominal damages *without* proof of actual injury.  This is because mental anguish and loss of reputation are presumed based on the statement alone.  *Brady v. Klentzman*, 515 S.W.3d 878, 886 (Tex. 2017).(emphasis added)  Examples of statements that are defamatory *per se* include those accusing someone of a crime or those that tend to injure a person in his office, profession, or occupation.  *In re Lipsky*, 460 S.W.3d at 596.(emphasis added).

171.   Defendant CCISD's actions and words have fundamentally altered the trajectory of Dr. Evans' career path.  An administrator of her knowledge and experience bracket is traditionally couched with a six figure salary, and a projected service of at least a decade, not including room for advancement. That trajectory has been immutably altered for the worse.

172.   **SPECIAL DAMAGES**.  By and through CCISD's breach of the Plaintiff's Chapter 21 Term Employment Contract, the Plaintiff has incurred Consequential or Special Damages – damages due to special circumstances or conditions that are not ordinarily predictable. "Special damages," or consequential damages, are "those damages which result naturally,

but not necessarily," from the defendant's wrongful acts. *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 163 (Tex.1992) .  CCISD's actions have *directly* resulted in the Plaintiff's business and personal reputation being irrevocably tarnished.  And the publication of her non-renewal *shall* result in lost future business opportunities in conjunction with that tarnished reputation.  Meaning that her future losses are foreseeable due to that same activity.  These damages are neither remote, uncertain, or conjectural. *Arthur Anderson & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 816 (Tex. 1997).

173.   Because the Plaintiff's employment was Term – and specifically *not* At-Will employment, as is enjoyed by the balance of Texas employees – her loss of income *is* a foreseeable consequence of – and traceable to – the acts of the Defendants.

## XIV.   PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Dr. Megan Rynn Evans prays that Defendant Clear Creek Independent School District be cited to appear and answer, and that on final trial Plaintiff be granted relief as follows:

1.)   Judgment against Defendant in excess of the minimum jurisdictional limits of this court in the amount of **$1,250,000.00** ;

2.)   Judgment directing the Defendant to pay Plaintiff actual, compensatory, punitive, and exemplary damages on all counts, whether statutory or at common law;

3.)   Costs of suit and reasonable court fees;

4.)   Prejudgment and post-judgment interest as provided by law;

5.)   Such other and further relief as Plaintiff may be justly entitled by law.

Respectfully Submitted,

/s/ Julian Frachtman

H. Julian Frachtman
TBN 24087536
SDTX 2695031
3100 Richmond, Suite 203
Houston, Texas 77098
tel. 832-499-0611
fax. 713-651-0819
Hfrachtmanlaw@gmail.com
ATTORNEY FOR PLAINTIFF
MEGAN RYNN EVANS

## CERTIFICATE OF SERVICE

It Is hereby certified that on July 13th , 2021, the undersigned counsel electronically filed his **Plaintiff's Original Complaint**, with attached Exhibit(s), In the above styled and numbered cause of action, with the cm/ecf electronic filing system, and copies same filing to the electronic mail service of the following:

Clay T. Grover
Cgrover@rmgllp.com
Alexa Gould
Agould@rmgllp.com
Mariana G. Evans
Mevans@rmgllp.com
Rogers, Morris & Grover, LLP
5718 Westheimer, Suite 1200
Houston, Texas 77057
COUNSEL FOR DEFENDANT
CLEAR CREEK INDEPENDENT SCHOOL DISTRICT

_/s/_    _Julian Frachtman_
H. Julian Frachtman